Jones, J.
 

 This proceeding was instituted by the director of highways under the provisions of Section 1229
 
 et seq.,
 
 General Code (112 Ohio Laws, 462), for the purpose of eliminating a railroad crossing at grade on state route No. 16, at a point about one-half mile west of Columbia Center. On January 10, 1931, the director of highways found that the elimination of the present grade crossing was reasonably necessary and expedient and ordered the Baltimore & Ohio Railroad Company to co-operate with his department in the preparation of plans for the project. The railroad company filed with the Public Utilities Commission its appeal from such findings and order. The commission, after hearing the appeal, found, on May 1, 1931, that the separation of grade at such crossing was unnecessary and inexpedient, and certified its finding to the Baltimore
 
 &
 
 Ohio Railroad Company and the director of highways. A rehearing having been denied him, the director now prosecutes error to this court seeking a reversal of the commission’s order.
 

 There is but little substantial conflict in the evidence which consists of oral testimony and many ex-
 
 *408
 
 Mbits. It appears that at the point in question the railway, consisting of two main tracks operated by the Baltimore & Ohio and Pennsylvania Companies,’ runs substantially in an easterly and westerly direction. Running in the same direction and closely paralleling it, both north and south of the crossing, is the highway known as state route No. 16. The evidence discloses that the highway makes a double turn as it nears the crossing point, and crosses the railroad at an angle of about thirty-two degrees. The director of highways proposes to create an underpass by means of which vehicular traffic will not be compelled to cross at grade. The evidence discloses that because of the alignment of the highway the vehicles approaching the crossing from either side must exercise a degree of care to avoid vehicular collision; it is also disclosed that at a point at least one hundred feet from the crossing persons traveling upon the highway have a vision in both directions whereby they may see an approaching train for a distance of about one mile, and that this vision is disturbed very slightly by growing crops and small cuts in the roadbed west of the crossing. In a period of twenty-four hours about two thousand vehicles and seventy-one trains pass over this crossing. No fatalities have occurred at this crossing since the year 1919, and the only accidents that have occurred since that time were one on September 21, 1924, and another on November 24, 1927, both of which were nonfatal. The evidence also discloses that flashlight signals were installed at the railroad crossing on June 19, 1929, and that since that time no collisions have occurred at the crossing.
 

 There is evidence that at one time a flashlight
 
 *409
 
 signal was knocked down, presumably by an automobile in negotiating a turn upon the highway, but that flashlight was located about ten feet from the traveled pavement in the highway. There are other signals on the highway notifying vehicular traffic of the railroad crossing.
 

 A driver of a vehicle, approaching the crossing from either direction, while he has a clear view both east and west, must turn his head sharply to the left in order to see an approaching train. This fact and the fact that care is required in negotiating the highway near the crossing point constitutes one of the chief reasons why the director of highways ordered the elimination.
 

 As to the cost of the project Mr. Heier, assistant grade separation engineer of the highway department, who was called as a witness by the director of highways, testified as follows:
 

 “Q. What is the total cost of the entire project? A. I think it was stated in the hearing before the Director, the cost which the railroads might be expected to participate in, would be $225,000.
 

 “Q. Now, what is the proportion of the participation? A. Usually fifty-fifty.
 

 ‘
 
 ‘
 
 Q. So that if the commission directs this separation of this grade, it means a total expenditure of approximately $225,000, of which sum, a proportion will be chargeable to the Railroad company. A. Half of the actual cost would be borne by the Baltimore and Ohio Railroad Company.
 

 “Q. It would be borne by the Railroad company that is operating there, that owns the track? A. Yes, both of them.
 

 “Q. Whatever company that may be; and the
 
 *410
 
 total amount to be divided in the same proportion would be around $225,000 according to your estimate? A. Yes, sir.”
 

 Based upon the facts adduced on the hearing, of which the foregoing are a part, the commission made the following finding and order:
 

 “The record establishes that the crossing in question is at approximately a 32 degree angle and that the approach is at least a mile on each side at an angle of approximately 12 degrees, the road making a reverse curve immediately at the point of crossing. The vision is good and unobscured except possibly by growing crops when the approach is from the west.
 

 “The plan set forth in the order of the Director of Highways calls for subway construction with a larger reverse curve, but one which would completely obscure approaching traffic from either side at the point of the underpass.
 

 “The record of accidents at this crossing shows a fatality approximately 15 years ago and several accidents, not fatal, amounting to damage of property within the last ten or eleven years, a majority of which were occasioned by the sharp turn in the -road, which would not be eliminated by the underpass, but might be aggravated because of the depression. Only a minority of the accidents were due to collision with trains.
 

 “The estimate of the director of highways shows the total cost of the State work to be $112,000.00, while the total cost of this project as shown by the estimate of the' railroad would amount of $222,-000.00. Eliminating the additional paving, which is borne by the State of Ohio, the costs are fixed at ap
 
 *411
 
 proximately 50% to the railroad and 50% public funds.
 

 ‘ ‘ The survey shows an increase in traffic 'over the highways and the daily 24-hour average of 1930 traffic amounted to 2050 vehicles. There are over 30 trains per day both ways at the point of this crossing on both systems of tracks.
 

 ‘ ‘ The Commission has, within the past two years, made a complete survey of the highway crossings of the State to determine the relative degree of dangerousness from the standpoint of traffic, condition of approach in crossing, vision from the highway and any other factor of danger that might determine the nature of such a crossing and has ordered throughout the State, the installation of many hundred flashing light signals which warn of approaching trains and has been gratified with a decided decrease in fatal accidents throughout the State, at grade crossings, resulting in the opinion of the Commission from such protective devices.
 

 “These are constructed at a cost of a few thousand dollars for each installation. The Commission ordered this particular crossing protected, as it is and has been for the past year, by flasher lights.
 

 * # #
 

 “Considering this appeal, therefore, from the standpoint of the relative dangerousness of the crossing and the $222,000.00 necessary for the separation of the grade and the economies which should be effected in the spending of the railroad’s and likewise the public’s money, because of an ever increasing tax burden, the Commission is of the opinion that the separation of grade at the crossing in question is not reasonably necessary and expedient and
 
 *412
 
 that the order of the director of highways should be reversed. ’ ’
 

 The two elements, the reasonable necessity and the expediency of the improvement, were required to be determined by the commission under the provisions of Section 1229-16, General Code (112 Ohio Laws, 472). It is impossible to announce any definite or fixed rule for the guidance of the highway department or commissi on in their determination whether an improvement is reasonably necessary and expedient. Many factors enter into the picture, such as the topography of the land, the safety of the traveling public, the character of the highway approaches, crossing signals or lack of such signals for warning the public and the cost of construction considered in connection with public safety. These and perhaps other features are to be considered in determining the necessity and expediency of the grade separation. In this case the commission reached its conclusion largely upon the following facts which were not seriously disputed: That there was no substantial interruption of vision in either direction, preventing vehicular traffic on the highway from seeing approaching trains; that flashlight signals had been installed about two years prior to the hearing pursuant to its own order, since which time no crossing accident had occurred, and although there was some dispute about the fact the commission was of the opinion that the present plan of subway construction would, to some extent, obscure the vision of vehicular traffic approaching on either side of the underpass. In addition the commission was of the opinion that the cost of grade separation would be very large and substantial, amounting to
 
 *413
 
 some $222,000, which must he borne by the railroad and the public — a cost imposed in a time of severe depression. All of these elements were considered by the commission in making its finding that the improvement was unnecessary and inexpedient, and in reversing the order of the director of highways.
 

 In order to reverse the findings of the commission it is necessary for this court to find that they are not supported by the evidence, or that they are so manifestly against its weight as to be unlawful or unreasonable. This we are unable to do, and it therefore follows that the order of the commission will be affirmed.
 

 Order affirmed.
 

 Marshall, C. J., Matthias, Day, Allen, Kinkade and Robinson, JJ., concur.